Herbert L. Burrows and Emily Burrows v. Commissioner.
Burrows v. Commissioner
Docket No. 2016-68.
United States Tax Court
T.C. Memo 1970-80; 1970 Tax Ct. Memo LEXIS 285; 29 T.C.M. (CCH) 373; T.C.M. (RIA) 70080; March 31, 1970, Filed *285 F. Edward Little, 629 S. Springs St., Los Angeles, Calif., for the petitioners. Sheldon M. Sisson, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for the calendar years 1964 and 1965 in the amounts of $4,360.45 and $3,565.69, respectively. Several issues raised by the pleadings were conceded by respondent at the trial and one issue was conceded by petitioners, leaving for our decision the following: (1) Whether petitioners are entitled to deduct in each year here in issue an amount in excess of that conceded by respondent to be deductible as the expense of business use of their automobiles. (2) Whether petitioners are entitled to deduct in each year here in issue an amount in excess of that conceded by respondent to be deductible for business use of the telephones in their personal residence. (3) Did petitioners expend in each of the years here in issue for premiums on health and accident insurance the amounts which they included for such expenditures as part of deductible medical expenses in their Federal income tax returns? (4) What is the proper allocation *286 for purposes of computing depreciation of petitioners' cost of each of two furnished multiple unit rental residential properties, one of which was purchased in 1961 and the other of which was purchased in 1963, to land, buildings, and furnishings? Findings of Fact Petitioners, husband and wife who resided at the date of the filing of the petition in this case in Northridge, California, filed joint Federal income tax returns for the calendar years 1964 and 1965 with the district director of internal revenue at Los Angeles, California. Herbert L. Burrows (hereinafter referred to as petitioner) is a medical doctor specializing in ophthalmology. He and his wife during the years here in issue owned and participated in the management of rental properties at Laguna Beach, California and Reno, Nevada. They owned land in the San Bernardino Mountains. In September of 1964 they received a notice of condemnation of this property for the Feather River Project. During each of the years here in issue petitioners were members of a partnership operating a trailer park and owning additional land in the Saugus-Newhall area. In 1965 petitioner was elected as the representative of the trailer park *287 owners in the Saugus-Newhall area to contest the proposal of the Cable Vision Company to break its contracts with the trailer parks. Petitioner's wife handled, on behalf of petitioners, the management of the Reno, Nevada rental property and assisted in the management of the Laguna Beach properties and the trailer park. It is approximately 90 miles from petitioners' home to the Laguna Beach properties, approximately 450 miles to the Reno, Nevada property, between 15 and 20 miles to the Saugus-Newhall property, and about 100 miles to the San Bernardino property. During the years here in issue either petitioner or his wife or both of them made a trip about once a month to Laguna Beach in connection with the management of their rental properties. During 1964 and most of 1965 petitioner or his wife, and occasionally together, made three to four trips a month to the Saugus-Newhall properties in connection with the operation of the trailer park in which they owned a partnership interest. For approximately 2 months in 1965 when the trailer park operators were negotiating with respect to their Cable Vision contract, petitioners, or one of them, made about two trips a week to the Saugus-Newhall *288 properties. During 1964 and 1965 petitioners made one or two trips a year to their Reno, Nevada property. They went together on these trips. 374 During 1964 petitioners visited their San Bernardino property three or four times and in 1965 they visited this property six times, primarily in connection with making an assessment of the value of the property because of its pending condemnation. They went together on most of their visits to this property but petitioner went separately with his attorney on at least one occasion. During 1964 and 1965 petitioners owned two Mercedes-Benz automobiles, one of which was considered by them as petitioner's car and the other as his wife's car. During part of 1964 petitioners also owned a Volkswagen but this car was used primarily by their 19-year-old son. The distance from petitioner's home to his office was 4 miles. Except for commuting from his home to his office, petitioner used his car almost entirely in connection with his medical practice and his real estate business. Petitioner did a substantial amount of emergency surgery as well as planned operations on various patients primarily in two hospitals, one located in San Fernando, *289 California and the other in Van Nuys, California. He used his automobile for transportation in connection with this work. Petitioner always drove his car if he alone visited one of his business properties and sometimes when he visited one of these properties with his wife. Occasionally petitioner and his wife would drive to church or do other personal driving in petitioner's car if it were more convenient to use his car rather than his wife's car. However, most of their driving for personal reasons was in petitioner's wife's car. During 1964 and 1965 petitioner's wife was on the Board of the Women's Auxiliary of the Los Angeles Medical Association and served as chairman of several committees of that Association. She was a member of the Holy Cross Hospital Guild and on the Board of the Auxiliary for the Loma Linda University in Los Angeles. She was the Auxiliary's decorating chairman during the years here in issue. Petitioner's wife drove her automobile to the various meetings she attended of these organizations. She also drove her automobile when she made trips alone to the various business properties owned by petitioners and sometimes drove her automobile when she and petitioner *290 visited these properties together. The two Mercedes-Benz automobiles owned by petitioners were driven in each of the years here in issue a total of between 35,000 and 40,000 miles. Petitioner's wife occasionally, particularly around Christmastime, used her automobile to assist petitioner with such items as business gifts to his employees and office decorations for his medical offices. Petitioners had three telephone placements in their home. One was located in petitioner's study, one in his bedroom, and the third in a room near the kitchen where his wife kept a desk and some files. During the entire years 1964 and 1965 petitioners and their 5-year-old son occupied their home. During part of each of these years petitioners' 19-year-old son also lived with them. There were no other regular occupants of petitioners' home during the years here in issue. Petitioner used the telephones located in his home to receive emergency calls, to call patients, and to call the hospitals in which he practiced. Petitioner's wife used the telephones to make calls in connection with her civic work. Both petitioner and his wife used the telephones to make calls in connection with their business real *291 estate. Petitioner's wife also used the telephone to telephone her mother and to make other personal calls. Petitioner also occasionally made personal calls and so did his 19-year-old son. During 1964 petitioner paid total premiums in excess of $785.36 on 18 separate policies of health and accident insurance and in 1965 paid total premiums in excess of $1,231.30 on 20 separate policies of health and accident insurance. In 1961 petitioners purchased for $67,500 a 35-foot wide, 110-foot deep ocean front lot at 1165 Gaviota, Laguna Beach, California with a 2-bedroom house with a small apartment in the rear thereon. Both the house proper and apartment were furnished and the price paid by petitioners included the furnishings. They placed a deed of trust on the property and were required by the lender to obtain $35,000 insurance on the building on the property. Later petitioners refinanced this property and pursuant to the request of the lender insured the building for $50,000. In 1963 petitioners purchased for $75,000 a 25-foot wide, 110-foot deep ocean front lot at 1155 Gaviota, Laguna Beach, California with a building containing three apartment units thereon. The apartments were *292 furnished when petitioners purchased the property and the purchase price included the furnishings. Petitioner borrowed a part 375 of the purchase price and the loan was secured by a deed of trust on the property. The lenders required petitioners to insure the building on the property for $55,000. The building on each of the lots was about 25 years old at the time petitioners purchased the property and each was in good condition. The furnishings were also in good condition when petitioner purchased the property. The properties were in a good rental location and have been rented most of the time since petitioners purchased them. The rental charge is much higher in the summer than in the winter since Laguna Beach is primarily a summer resort. However, all five rental units have been rented most of the winter as well as in the summer months. During the years 1960 through 1963 some vacant ocean front land at Laguna Beach sold at around $1,000 a front foot. Petitioners on their Federal income tax return for 1964 deducted as business expense automobile depreciation of $2,139.00 and automobile expense of $1,871.37 and on their Federal income tax return for 1965 deducted as business *293 expense automobile depreciation of $1,955.00 and automobile expense of $2,230.82. Respondent in his notice of deficiency disallowed these entire claimed deductions with the explanation that petitioners had not shown that these amounts constituted ordinary and necessary business expenses or were expended for the purposes designated. At the trial respondent conceded that petitioners were entitled in each year to the deduction claimed for automobile depreciation, which amount the parties agreed represented depreciation with respect to one of petitioners' Mercedes-Benz automobiles and that petitioners were entitled to deduct $935.68 in 1964 and $1,115.41 in 1965 as automobile operation expenses, which amounts the parties agreed were the cost of operation in each year of one of petitioners' Mercedes-Benz automobiles. On their Federal income tax returns for the years 1964 and 1965 petitioners deducted $1,647.95 and $1,262.83 as business telephone expense. These claimed deductions included the entire amounts paid by petitioners for the telephones in their residence. Respondent in his notice of deficiency disallowed $364.15 and $306.51 of the claimed deductions for the years 1964 and 1965, *294 respectively, with the same explanation as given with respect to the disallowed automobile expense. At the trial respondent conceded that petitioners were entitled to deduct telephone expense in each of the years here in issue of $120 in excess of the amount which he allowed in the notice of deficiency. Petitioners on their Federal income tax returns for 1964 and 1965 claimed as part of their deductible medical expenses $785.36 and $1,231.30, respectively, as payments of health and accident insurance. Respondent disallowed $399.40 and $812.00 of these claimed medical expense deductions for lack of substantiation. Petitioners on their Federal income tax returns for 1964 and 1965 claimed a basis for computation of depreciation on their rental properties of $35,000 for the building at 1165 Gaviota and $6,000 for the furniture in the rental units at that location and $48,227 for the building and $6,235 for the furniture located at 1155 Gaviota. Respondent in his notice of deficiency determined that petitioners' basis for computation of depreciation on the building at 1165 Gaviota was $20,353.00 and on the furniture was $4,242.50 and that petitioners' basis for computation of depreciation *295 on the building at 1155 Gaviota was $36,400 and on the furniture at that location was $1,422. The basis for respondent's adjustment was an allocation different from that used by petitioners of the purchase price paid by them for the properties to land, buildings, and furniture. Respondent allocated $42,960 to the land located at 1165 Gaviota as compared to petitioners' allocation of $26,555.55 and allocated $41,640 to the land located at 1155 Gaviota as compared to petitioners' allocation of $25,000. Opinion All of the issues here are purely factual. Respondent has now conceded that petitioner is entitled to deduct all expenses with respect to one of the automobiles which were used by him and his wife. Since there was some minor use by petitioner of his automobile for personal purposes, this in effect allowed some amount with respect to petitioner's wife's automobile. The evidence shows that the primary use by petitioner's wife of her automobile was in connection with various medical auxiliaries and in connection with managing the business real estate which she and petitioner owned. There was some use by petitioner's wife of her automobile in connection with petitioner's medical *296 practice. In our view petitioner has failed to establish that his wife's use of her automobile to attend the 376 meetings of various women's auxiliaries for medical institutions should be allowed as a business expense. Petitioner did show that he received some advantage from his wife's activities in attending the various medical auxiliaries by meeting the doctor husbands of women with whom his wife was associated but the advantage was minor. Petitioners have made no claim for a deduction of automobile expense as a charitable contribution since they took the position that the wife's activities with respect to the various medical auxiliaries was a business expense. The evidence does show that petitioner's wife did more driving in connection with managing the business properties in her car than the amount of personal driving that was done in petitioner's automobile. The major part of the personal driving done by petitioner and his wife was in his wife's car. Weighing heavily against petitioners for lack of preciseness in showing the additional amount to which they are entitled for automobile expenses, we conclude that they are entitled to $300 a year of such expenses in excess of *297 the amount conceded by respondent. Petitioners claimed the entire expense of the telephones in their personal residence as a deductible business expense. Respondent has either allowed or conceded all but a very minor portion of this claimed deduction and petitioners have failed to show that they are entitled to a deduction for telephone expense in excess of the amounts allowed or conceded by respondent. Respondent's counsel stated at the trial that the disallowance of the claimed deduction of a portion of medical expense for premiums paid by petitioner with respect to health and accident insurance was for failure to substantiate. At the trial petitioner substantiated by check stubs and his testimony identifying the purpose for which the expenditure shown on the stub was made from the notation placed thereon by him at the time the original check was drawn, amounts expended for premiums on health and accident insurance in excess of the amounts which he claimed as part of medical expenses on his income tax returns. We therefore hold that petitioners are entitled to the entire amount claimed on their income tax returns as medical expenses for premiums on health and accident insurance.
*298 The final issue is the basis which petitioners had in certain rental houses and the furniture therein for the purpose of computing depreciation. The issue arose because respondent considered the allocations by petitioners of the original cost to land, buildings, and furniture to be in error. Petitioner, through his testimony and that of a qualified appraiser, substantiated his claimed cost basis in the building at 1165 Gaviota as $35,000 and in the building at 1155 Gaviota as $48,227. We are persuaded by the expert's testimony that petitioner's allocation of costs to the buildings was not in excess of an appropriate amount. The testimony with respect to the value of the furniture or the cost which should be properly allocated thereto was sketchy and totally inadequate to show error in respondent's determination. We therefore sustain respondent's determination with respect to the basis in the furniture in the houses on the two properties for the purpose of computing depreciation. Decision will be entered under Rule 50.